UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMOLAK DHALIWAL,<br><br>Plaintiff,<br><br>v.<br><br>ACE HARDWARE CORPORATION, et al,<br><br>Defendants. | No. 2:22-cv-00446-DAD-KJN<br><br>ORDER GRANTING AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND DISMISS THIS ACTION<br><br>(Doc. No. 14) |

This matter is before the court on defendants' motion to compel arbitration, strike class claims, and dismiss this putative class action. (Doc. No. 14.)[1] On September 14, 2022, the court vacated the hearing on the pending motion. (Doc. No. 19.) Having reviewed the parties' briefing, the court finds defendants' motion suitable for a decision on the papers. For the reasons set forth below, defendants' motion will be granted in part and denied in part.

**BACKGROUND**

On September 8, 2021, plaintiff Amolak Dhaliwal initiated this putative wage and hour class action against his employer defendant Ace Hardware Corporation ("Ace") and a district manager at Ace, defendant Doug Woodmansee (collectively, "defendants") in the Placer County

---

[1] The pending motion was brought by defendant Ace Hardware Corporation. However, the arguments apply equally to defendant Doug Woodmansee. For ease, the court will refer to the pending motion as that of both defendants.

1

1     Superior Court.  (Doc. No. 1 at 37.)  On November 3, 2021, defendants filed their answer to the
2     complaint.  (*Id.* at 65.)  On December 2, 2021, plaintiff filed the operative first amended
3     complaint ("FAC"), in which he asserts claims under the California Labor Code and the
4     applicable wage orders and alleges that defendants failed to pay overtime wages, minimum
5     wages, and accrued vacation wages, and to provide meal periods, rest periods, all wages due upon
6     separation of employment, and accurate itemized wage statements.  (*Id.* at 97.)  Plaintiff also
7     asserts a claim under California's Unfair Competition Law, as well as a representative action
8     claim for civil penalties under the Private Attorneys General Act of 2004, California Labor Code
9     §§ 2698–2699 ("PAGA").  (*Id.*)  On January 4, 2022, defendants filed their answer to the FAC.
10    (*Id.* at 129.)

11         On March 10, 2022, defendant Ace removed this action to this federal court pursuant to
12    the Class Action Fairness Act ("CAFA").  (*Id.* at 1.)  On April 8, 2022, plaintiff moved to remand
13    this action to the Placer County Superior Court.  (Doc. No. 6.)  The court denied plaintiff's
14    motion to remand on December 8, 2022.  (Doc. No. 22.)

15         On August 11, 2022, defendants filed the pending motion to compel arbitration and
16    dismiss this action, contending that on May 15, 2019, plaintiff executed an arbitration agreement
17    with Ace, entitled "ARBITRATION," in which he agreed to arbitrate all claims arising out of his
18    employment with Ace and forgo any class or representative claims against the company (the
19    "Agreement").  (Doc. No. 14 at 10, 12.)  The Agreement provides that "Ace Hardware
20    Corporation (and its partners, subsidiaries, affiliates, officers, directors, employees, agents,
21    representatives, shareholders, successors and assigns)" and plaintiff "will be agreeing to
22    arbitration as the exclusive method for economically and efficiently resolving the disputes and/or
23    claims set forth in Section 3 of [the Agreement]."  (Doc. No. 14-2 at 7.)  Section 3 of the
24    Agreement defines the covered claims as including:

> all past, present, future disputes and claims related to your employment with . . . or termination of employment from the Company . . . disputes and claims including, but not limited to . . . minimum wage; off the clock work; overtime; bonuses; meal/rest periods; wage statements; reimbursement; penalties; benefits; violation of any federal, state or other government constitution, statute, ordinance or regulation, including but not limited to . . . the

> California Labor Code . . . the California Wage Orders, and/or the California Private Attorneys General Act . . . .

(*Id.*)  Based on this provision, defendants argue that this court must grant their motion to compel plaintiff to arbitrate his claims against them.  (Doc. No. 14 at 17.)

On August 31, 2022, plaintiff filed his opposition to defendants' motion.  (Doc. No. 16.)  On September 12, 2022, defendants filed their reply thereto.  (Doc. No. 18.)

**LEGAL STANDARD**

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA").  9 U.S.C. § 2.  The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them.  9 U.S.C. § 4.  In considering a motion to compel arbitration, the "court's role under the Act . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate.  *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).

There is an "emphatic federal policy in favor of arbitral dispute resolution."  *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985).  As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)).  However, the Supreme Court recently clarified that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules."  *Morgan v. Sundance, Inc.*, __U.S.__, 142 S. Ct. 1708, 1713 (2022).  Rather, the presumption in favor of arbitration policy "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts."  *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. of*

1  *Teamsters*, 561 U.S. 287, 302 (2010)).

2  An arbitration agreement may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Accordingly, courts may not apply traditional contractual defenses, like duress and unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id.* at 344 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989)).

## DISCUSSION

**A.    Whether Defendants Waived Their Right to Compel Arbitration**

Until recently, in the Ninth Circuit, a party seeking to prove waiver of a right to arbitrate was required to demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). However, the Supreme Court recently eliminated the third element of prejudice from the required showing. *See Morgan*, 142 S. Ct. at 1712–13 (holding that, under the FAA, a court may not "condition a waiver of the right to arbitrate on a showing of prejudice"). Thus, the waiver of a right to arbitrate question now turns on whether the party opposing arbitration establishes only the first two elements: (1) "knowledge of an existing right to compel arbitration" and (2) "acts inconsistent with that existing right." *Britton*, 916 F.2d at 1412; *see also Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014–15 (9th Cir. 2023) (noting that since the decision in *Morgan*, "the party opposing arbitration still bears the burden of showing waiver, [but] the burden is no longer 'heavy,'" and explaining that "the burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context").

The parties do not dispute that the first element is satisfied here. (Doc. Nos. 16 at 12; 18 at 17–21.) Thus, the court need only consider the second element: whether plaintiff has

4

1 established that defendants' intentional acts were inconsistent with exercising their right to
2 compel arbitration. In doing so, the court must consider "the totality of the parties' actions."
3 *Armstrong*, 59 F.4th at 1015 (citation omitted). "[A] party generally 'acts inconsistently with
4 exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel
5 arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to
6 take advantage of being in court.'" *Id.* (citation omitted).

7    First, it appears defendants' actions in the early stages of this litigation reflect their
8 intention to exercise their right to arbitrate this dispute. Specifically, defendants pled arbitration
9 as an affirmative defense in their answers to both plaintiff's original complaint and FAC. (Doc.
10 No. 1 at 74, 139.) Furthermore, defendants objected to plaintiff's discovery requests specifically
11 on the grounds that plaintiff's claims are subject to arbitration. (Doc. No. 14-1.) These actions
12 are consistent with defendants' intent to compel arbitration. *See Armstrong*, 59 F.4th at 1015
13 (finding that the defendant acted consistent with its intent to compel arbitration where it "pleaded
14 arbitration as an affirmative defense in its answers to both the original complaint and amended
15 complaint").

16    Second, the court is not persuaded by plaintiff's arguments that defendants actively
17 litigated the merits of this case for a prolonged period to take advantage of being in court. (Doc.
18 No. 16 at 13–16.) Defendants filed the pending motion to compel arbitration approximately five
19 months after removing the case to federal court and within a year after plaintiff filed the original
20 complaint. During that time, defendants did not seek or obtain a court ruling on the merits. *See*
21 *Armstrong*, 59 F.4th at 1016 (finding that the defendant did not waver from its position that it had
22 the right to arbitrate because it moved to compel arbitration within a year after the plaintiff filed
23 the complaint and it never sought or obtained a ruling on the merits). The court disagrees with
24 plaintiff's contention that defendants sought a ruling on the merits merely by arguing that
25 defendant Woodmansee was a "sham defendant" in their notice of removal and in their opposition
26 to plaintiff's motion to remand. (Doc. No. 16 at 14.) In arguing that defendant Woodmansee was
27 a "sham defendant," defendants did not seek to dismiss him as a named defendant based on the
28 merits of plaintiff's claims against him. Rather, defendants argued that Woodmansee should be

disregarded for the purposes of establishing diversity jurisdiction. (Doc. Nos. 1 at 9; 9 at 25.)

Additionally, plaintiff takes issue with the fact that defendants removed this case from state court to federal court and opposed plaintiff's motion to remand. (Doc. No. 16 at 13.) The court concludes that these actions did not demonstrate a decision to take advantage of the judicial forum. *See Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 846 (N.D. Cal. 2012) (holding that "removal prior to compelling arbitration is neither uncommon nor inconsistent with the right to arbitrate"); *Armstrong v. Michaels Stores, Inc.*, No. 17-cv-06540-LHK, 2018 WL 6505997, at *10 (N.D. Cal. Dec. 11, 2018), *aff'd*, 59 F.4th 1011 (9th Cir. 2023) ("[C]ourts have consistently rejected the argument that a party waived the right to compel arbitration by removing a case to federal court.") (collecting cases). A further problem with plaintiff's position in this regard is that defendants removed the case on the basis of CAFA (Doc. No. 1 at 4), which the court has previously concluded was proper (Doc. No. 22), and thus plaintiff's action could not have been heard in state court. *See Armstrong*, 2018 WL 6505997, at *10 (concluding that a defendant's removal of an action based on CAFA cannot constitute waiver of the right to arbitrate and explaining that "class actions that involve an amount in controversy that exceeds $5 million *cannot* remain in state court because such a class action is subject to the original jurisdiction of the district courts of the United States").

The court is also not persuaded by plaintiff's argument that the fact that the parties stipulated to stay the Rule 26(f) deadlines indicates defendants' intent to take advantage of being in court. (Doc. No. 16 at 13). If anything, defendants' decision to stipulate to the stay of discovery supports the view that they did not seek to take advantage of federal discovery procedures that are not available in arbitration. *Cf. Irwin v. UBS Painewebber, Inc.*, 324 F. Supp. 2d 1103, 1110 (C.D. Cal. 2004) ("One of the ways in which a party may act inconsistent with the right to arbitrate is by taking advantage of judicial discovery procedures not available in arbitration.") (citing *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1196 (2003)).

Having considered the totality of defendants' actions taken in this case, the court readily finds that plaintiff has not established that defendants' intentional acts were inconsistent with

/////

exercising their right to compel arbitration.  Accordingly, the court finds that defendants did not waive their right to compel arbitration in this case.

**B.     Whether a Valid Arbitration Agreement Exists**

As noted above, defendants bear the burden of establishing that a valid arbitration agreement exists between them and plaintiff by a preponderance of the evidence.  *See Knutson*, 771 F.3d at 565.  In deciding whether parties have agreed to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (same).  "It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565.  "'Mutual assent may be manifested by written or spoken words, or by conduct,' and acceptance of contract terms may be implied through action or inaction." *Id.* (internal citations omitted).  "Thus, 'an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.'" *Id.* (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 991 (1972)).  "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Id.*  However, "[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 566 (quoting *Windsor Mills*, 25 Cal. App. 3d at 993).

In their pending motion, defendants argue that plaintiff is required to arbitrate his claims pursuant to the two-page arbitration Agreement that he signed, a copy of which defendants filed with the court as an exhibit to the declaration of Megan Trittin, a senior human resources information systems analyst for defendant Ace. (Doc. Nos. 14 at 15; 14-2 at ¶ 1; 14-2 at 7–8.) In her declaration, Ms. Trittin states that in May 2019, defendant Ace distributed its arbitration agreement, entitled "ARBITRATION," to its employees, including Dhaliwal, and that plaintiff accessed and reviewed the Agreement using an electronic human resources management system called Workday and thereafter signed the Agreement through DocuSign on May 15, 2019. (Doc.

7

No. 14-2 at ¶¶ 7, 13.)  Ms. Trittin also explains that for plaintiff to have viewed and signed the Agreement, he was required to log into his Workday account using his unique password, which neither Workday nor Ace were capable of knowing.  (*Id.* at ¶¶ 8–9.)  Indeed, a review of the Agreement reveals that it bears plaintiff's name, his electronic signature, and the date May 15, 2019.  (*Id.* at 7–8.)

In his opposition to the pending motion, plaintiff challenges the validity of the Agreement, stating that he does not "recall ever signing an arbitration agreement for [d]efendants, either on paper or electronically, at any point during [his] employment with [d]efendants."  (Doc. No. 16-1 at ¶ 5.)  However, "nothing in the law requires a party to remember having contracted for the agreement to be valid."  *Pinto v. Squaw Valley Resort, LLC*, No. 17-cv-02281-MCE-CKD, 2018 WL 5630702, at *2 (E.D. Cal. Oct. 31, 2018).  The fact that a person "does not remember signing [an] Arbitration Agreement . . . is not sufficient" to challenge the existence of an agreement.  *Garcia v. NRI USA, LLC*, No. 2:17-cv-08355-ODW-GJS, 2018 WL 3702293 (C.D. Cal. Aug. 1, 2018); *see also Chalian v. CVS Pharm., Inc.*, No. 16-cv-08979-AB-AGR, 2017 WL 6940520, at *2 (C.D. Cal. Oct. 17, 2017) (finding that the electronic signature on an agreement made it enforceable despite plaintiff's statement that she did not recall signing the agreement).

Plaintiff also posits that there is no valid agreement to arbitrate because he did not know the meaning of the term "arbitration" until his counsel explained it to him while preparing his opposition to the pending motion.  (Doc. No. 16 at 17.)  Plaintiff's position in this regard is equally unpersuasive.  Plaintiff's "proffered subjective intent . . . is not enough to rebut the evidence of [his] electronic signature as an objective manifestation of assent to the terms of the Arbitration Agreement."  *Castillo v. Cava Mezze Grill, LLC*, No. 18-cv-7994-MWF-MAA, 2018 WL 7501263, at *4 (C.D. Cal. Dec. 21, 2018); *see also Trevino v. Acosta, Inc.*, No. 17-cv-06529-NC, 2018 WL 3537885, at *7 (N.D. Cal. July 23, 2018) ("[T]he Court cannot invalidate the terms of the signed arbitration agreement merely because Trevino did not understand the agreement or chose not to read it.").

Accordingly, the court finds that defendants have met their burden of establishing that a valid, written agreement to arbitrate exists between the parties.

8

**C.      Whether the Agreement Encompasses the Dispute**

The court must now determine whether the Agreement encompasses the dispute at issue. The Agreement is between plaintiff and Ace and, amongst others, Ace's "officers, directors, employees, agents, [and] representatives." (Doc. No. 14-2 at 7.) Thus, the Agreement is between plaintiff and defendant Ace and between plaintiff and defendant Woodmansee, who was a district manager at Ace. As noted above, the Agreement covers the following claims:

> all past, present, future disputes and claims related to your employment with . . . or termination of employment from the Company . . . disputes and claims including, but not limited to . . . minimum wage; off the clock work; overtime; bonuses; meal/rest periods; wage statements; reimbursement; penalties; benefits; violation of any federal, state or other government constitution, statute, ordinance or regulation, including but not limited to . . . the California Labor Code . . . the California Wage Orders, and/or the California Private Attorneys General Act . . . .

(Doc. No. 14-2 at 7.) All of plaintiff's claims asserted in this action relate to his employment with defendants and are thus encompassed by the Agreement.

Because there is a valid agreement to arbitrate between the parties and the claims raised in plaintiff's FAC fall within the scope of the parties' Agreement, the court must compel arbitration of plaintiff's claims, unless the Agreement is unenforceable.

**D.      Whether the Agreement is Enforceable**

Next, the court analyzes whether the Agreement is valid and enforceable under 9 U.S.C. § 2. Plaintiff attempts to defeat the pending motion by arguing that the Agreement is procedurally and substantively unconscionable. (Doc. No. 16 at 19–21.) Specifically, plaintiff contends that: (1) the Agreement is a "contract of adhesion" and there is a "clear showing of surprise" and therefore it is procedurally unconscionable (*id.* at 19); and (2) "the presence of a representative action waiver [in the Agreement] has an obvious disparate, non-mutual impact on employees and their rights and thus bespeaks substantive unconscionability" (*id.* at 21).

        1.      Procedural Unconscionability

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000). "The term contract of adhesion signifies a standardized contract, which, imposed and drafted by

9

the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.*

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)); *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) ("Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement."). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation,'" while "[s]urprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria*, 733 F.3d at 922 (citations omitted).

In his opposition to the pending motion, plaintiff argues that the Agreement is procedurally unconscionable because it is a contract of adhesion presented to plaintiff as a condition of continuing his employment. (Doc. No. 16 at 19.) Indeed, a review of the Agreement reflects that it provides that Ace "maintains a policy of arbitration as a condition of employment." (Doc. No. 14-2 at 7.) This indicates some degree of procedural unconscionability. *See Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000–01 (9th Cir. 2021) (determining that the plaintiff's belief that he had to sign the contract to continue his employment indicated some degree of procedural unconscionability, but noting that "a contract of adhesion is not '*per se* unconscionable.'") (citation omitted).   However, it does not follow that the Agreement is procedurally unconscionable to such an extent as to be unenforceable. *See id.; see also Grabrowski v. Robinson*, 817 F. Supp. 2d 1159, 1172 (S.D. Cal. 2011) ("In light of the Supreme Court's decision in *Concepcion*, however, the Court does not find that the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability."); *Mance v. Mercedes-Benz*, 901 F. Supp. 2d 1147, 1161–62 (N.D. Cal. 2012) ("[W]hile the contract was adhesive, this fact, alone and after *Concepcion*, does not render the arbitration provision procedurally unconscionable.") (collecting cases); *Gutierrez v. FriendFinder Networks Inc.*, No. 18-cv-05918-

BLF, 2019 WL 1974900, at *10 (N.D. Cal. May 3, 2019) ("[T]he Ninth Circuit has made clear that 'the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most.'") (quoting *Poublon*, 846 F.3d at 1261–62).

Plaintiff further argues that there is a showing of surprise because the Agreement states that JAMS Employment Rules will apply to arbitrations pursuant to the Agreement, but the applicable JAMS Employment Rules were not attached to the Agreement. (Doc. No. 16 at 20.) This argument is unavailing, however, because the California Supreme Court has held that an employer's "failure to attach the [arbitration rules] . . . does not affect" a court's unconscionability analysis where the unconscionability challenge does not concern any element of the rules. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1246 (2016). Here, plaintiff does not contend that the JAMS Employment Rules themselves are unconscionable. Thus, the mere fact that the JAMS Employment Rules were not provided to plaintiff is irrelevant and does not render the Agreement procedurally unconscionable. *See id*. Additionally, the Agreement at issue was clearly labeled "ARBITRATION," was only two pages long, and stated in fully capitalized text that "by signing this agreement, you acknowledge that you have received and read this agreement, understand its terms, and have voluntarily decided to accept the terms of the agreement by accepting or continuing employment with the company." (*See* Doc. No. 14 at 7–8.) Under these circumstances, the court cannot agree that defendants subjected plaintiff to any surprise that would warrant a finding of procedural unconscionability.

Accordingly, the court finds that the adhesive nature of the Agreement "demonstrates only a slight degree of procedural unconscionability." *Gutierrez*, 2019 WL 1974900, at *10.

1.  <u>Substantive Unconscionability</u>

Having found that the Agreement is only minimally procedurally unconscionable, the court must find that the Agreement is substantively unconscionable to a much greater degree in order to conclude that it, as a whole, is unconscionable. *Armendariz*, 24 Cal. 4th at 114.

Plaintiff argues that the Agreement is substantively unconscionable because it includes a waiver of the employee's right to bring a representative action, including a representative action under PAGA. (Doc. No. 16 at 21.) Specifically, the Agreement requires the "[p]arties to arbitrate

11

all claims," and it defines "claims" to include PAGA actions. (Doc. No. 14-2 at 7.) The Agreement further provides that "[t]he Parties agree that each may file claims against the other only in their individual capacities, and may not file claims as plaintiff and/or participate as a class member in any future class, collective, and/or group action against the other." (*Id.* at 8.) Similarly, the Agreement provides that "[t]he Parties agree that each may file claims against the other only in their individual capacities, and may not file claims as plaintiff and/or participate as a representative in any future representative action against the other." (*Id.*) According to plaintiff, these provisions constitute a wholesale PAGA waiver, which plaintiff contends is substantively unconscionable, because it "is clearly unlawful and beyond the pale of any legitimate bargain." (Doc. No. 16 at 22.) However, as defendants emphasize in their pending motion (Doc. No. 14 at 22–24), the inclusion of the PAGA waiver does not render the Agreement substantively unconscionable because the PAGA waiver is consistent with the Supreme Court's holding in *Viking River Cruises, Inc. v. Moriana*, __U.S.__, 142 S. Ct. 1906 (2022) and therefore is consistent with the applicable law.

In their pending motion, defendants argue that the Supreme Court's decision in *Viking River Cruises* confirms that plaintiff must be compelled to arbitrate his individual PAGA claim and plaintiff's remaining non-individual PAGA claims must be dismissed for lack of statutory standing. (Doc. No. 14 at 22–24.) In *Viking River Cruises*, the Supreme Court considered whether the FAA preempted the California Supreme Court's interpretation of PAGA in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014). *Viking River Cruises*, 142 S. Ct. at 1924–25. The *Iskanian* rule had two parts. The United States Supreme Court held that the first *Iskanian* rule prohibiting wholesale waivers of PAGA was not preempted. *Id.* However, the Supreme Court held that the second *Iskanian* rule, which prohibited parties from dividing PAGA actions into individual and non-individual claims and sending the individual claims to arbitration, was preempted. *Id.* at 1924. The Court went on to hold that, "as [the Court] see[s] it, PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding." *Id.* at 1925. Thus, once a plaintiff is compelled to arbitrate the plaintiff's individual PAGA claim, the plaintiff "is no

different from a member of the general public," and lacks statutory standing to maintain non-individual claims; as a result, "the correct course is to dismiss [the] remaining claims." *Id.*

Here, because the parties' Agreement requires the parties to arbitrate PAGA claims "only in their individual capacities" (Doc. No. 14-2 at 8), plaintiff's characterization of that PAGA waiver as being a "wholesale" waiver would appear to be inaccurate. Rather, the Agreement provides that *non-individual* PAGA claims are waived, i.e., an employee cannot bring a representative PAGA action against the employer, but *individual* PAGA claims may be brought. The fact that such individual PAGA claims must be submitted to arbitration pursuant to the Agreement does not amount to a wholesale PAGA waiver as plaintiff suggests in his opposition to the pending motion. Contrary to plaintiff's characterization, there is no wholesale PAGA waiver in the Agreement and the representative action waiver provision is not unlawful. *See Valencia v. Mattress Firm, Inc.*, No. 22-cv-06875-WHA, 2023 WL 2062951, at *3 (N.D. Cal. Feb. 16, 2023) (finding that because the plaintiff was permitted to raise her individual portion of the PAGA claim in arbitration under the arbitration agreement, the agreement did not operate as a wholesale waiver); *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, No. 18-cv-05226-EMC, 2022 WL 10585178, at *11 (N.D. Cal. Oct. 18, 2022) (same); *Shams v. Revature LLC*, No. 22-cv-01745-NC, 2022 WL 3453068, at *2 (N.D. Cal. Aug. 17, 2022) (same); *Johnson v. Lowe's Home Ctrs.*, LLC, No. 2:21-cv-00087-TLN-JDP, 2022 WL 4387796, at *3 (E.D. Cal. Sept. 22, 2022) (same).

Although the parties do not address it, the final issue the court must consider is whether to dismiss the non-individual PAGA claims or instead enter a stay pending the California Supreme Court's decision in *Adolph v. Uber Technologies, Inc.*, No. G059860, 2022 WL 1073583 (Cal. Ct. App., Apr. 11, 2022), *review granted* (Cal. July 20, 2022) (No. S274671),[2] a case which "will provide important guidance with respect to how the representative PAGA claims should be

---

[2] The California Supreme Court's docket in the *Adolph* appeal reflects that just last week the Clerk of the Supreme Court sent an oral argument letter advising counsel that "the court could set this case for argument within the next few months." *Adolph v. Uber Technologies, Inc.*, No. S274671, Oral Argument Letter (Cal. Mar. 9, 2023).

handled." *Dominguez v. Sonesta Int'l Hotels Corp.*, No. 22-cv-03027-JCS, 2023 WL 25707, at *8 n.2 (N.D. Cal. Jan. 3, 2023). California district court have taken different approaches in addressing this issue. *Compare Martinez-Gonzalez*, 2022 WL 10585178, at *12 (staying the non-individual PAGA claims pending the California Supreme Court's decision in *Adolph*), *and Dominguez*, 2023 WL 25707, at *8 (same), *with Johnson*, 2022 WL 4387796, at *4 (dismissing the non-individual PAGA claims), *and Rivas v. Coverall N. Am., Inc.*, No. 18-cv-1007-JGB-KK, 2022 WL 17960776, at *4 (C.D. Cal. Nov. 28, 2022) (same). This court finds the decisions in *Martinez-Gonzalez* and *Dominguez* to be persuasive. *See Martinez-Gonzalez*, 2022 WL 10585178, at *12 (in staying the non-individual PAGA claims, relying on Justice Sotomayor's concurrence in *Viking River Cruises* where she noted that if the United States Supreme Court's "understanding of state law is wrong, California courts, in an appropriate case, will have the last word") (quoting *Viking River Cruises*, 142 S. Ct. at 1925) (Sotomayor, J., concurring); *Dominguez*, 2023 WL 25707, at *8 (relying on the reasoning in the decision in *Martinez-Gonzalez* to find that a stay of the plaintiff's non-individual PAGA claim was appropriate).

In sum, the court concludes that in this case the parties' Agreement is enforceable. The court will therefore grant defendants' motion to compel arbitration of plaintiff's individual claims and will dismiss plaintiff's individual and class claims.[3] However, the court will stay the non-individual PAGA claims pending the California Supreme Court's decision in *Adolph*.

**CONCLUSION**

For the reasons set forth above,

1.  Defendants' motion (Doc. No. 14) is granted in part and denied in part as follows:

    a.  Defendants' motion to compel arbitration of plaintiff's individual claims is granted;

/////

---

[3] In the pending motion, defendants also moved to strike plaintiff's class claims. (Doc. No. 14 at 24.) The court need not address defendants' arguments in this regard, however, because defendants' motion to strike will be denied as having been rendered moot by this order. Nonetheless, the court does note that "motions to strike class allegations are disfavored." *Olney v. Job.com, Inc.*, No. 1:12-cv-01724-LJO, 2013 WL 5476813, at *3 (E.D. Cal. Sept. 30, 2013).

      b.      Defendants' motion to dismiss plaintiff's individual and putative class claims is granted;

      c.      Defendants' motion to dismiss plaintiff's non-individual PAGA claims is denied, and those claims are instead stayed pending the California Supreme Court's decision in *Adolph v. Uber Technologies, Inc.* (No. S274671); and

      d.      Defendants' motion to strike plaintiff's class claims is denied as having been rendered moot by this order;

2. This case is stayed pending the California Supreme Court's issuance of a decision in *Adolph v. Uber Technologies, Inc.* (No. S274671); and

3. Accordingly, the parties are directed to file a joint status report within fourteen (14) days of the California Supreme Court's issuance of a decision in *Adolph v. Uber Technologies, Inc.* (No. S274671). In the joint status report, the parties shall state their respective positions as to how plaintiff's non-individual PAGA claims should proceed.

IT IS SO ORDERED.

Dated:   **March 16, 2023**

                                                UNITED STATES DISTRICT JUDGE